FRANKLIN HAVEN & another *vs.* NATHANIEL ADAMS & another.
SAME *vs.* BOSTON AND WORCESTER RAILROAD CORPORATION.

A corporation may execute a deed in these words: " In testimony whereof said party of the first part have caused these presents to be signed by their president, and their common seal to be hereto affixed. A. B., President," and seal.

A railroad company executed a mortgage of real estate to trustees, reciting that they were desirous of raising money by loan not exceeding in amount $350,000, and had determined to issue bonds of a form which was annexed, and that the mortgage was executed in order to secure the same. The annexed form contained a certificate that the bond was secured by mortgage to the trustees on real estate for the sum of $350,000. The mortgage contained a provision authorizing the trustees, in case of failure to pay the principal or interest, or any part thereof, for ninety days from demand made after any of the said bonds should become due, to enter, at the request of the bondholder, and take possession of and use the premises, and apply the proceeds to the *pro rata* payment of the unpaid bonds; or, under circumstances therein expressed, to cause the premises, or so much thereof as might be necessary, to be sold at public auction. The mortgage also contained the following provision: " And it is further mutually agreed that until breach of condition of the aforesaid mortgage the party of the first part, their successors and assigns shall remain in undisturbed possession and occupation of the premises hereby conveyed; and nothing herein contained shall be so construed as to prevent said corporation from improving said real estate, or making leases of such parts thereof as they

may desire and have opportunity to make." *Held*, that, under this provision, the valid ity of leases executed by the mortgagors subsequently to the execution of the mortgage and their authority to execute leases, terminated upon breach of the condition of the mortgage; and that the trustees could not, by an oral assent, confirm leases so as to give them validity thereafter.

In an action to try the title, brought by mortgagees who have already been put in possession of the demanded premises by virtue of an execution issued upon a judgment obtained against the parties, the demandants, if they prevail, are not limited to a conditional judgment.

The first of these actions was a writ of entry to recover certain real estate in East Boston, to which the demandants claim title under an indenture, the material parts of which are as follows:

"This indenture made this first day of July, in the year of our Lord eighteen hundred and fifty, between the Grand Junction Railroad and Depot Company, a corporation duly established by the laws of Massachusetts, of the first part, and Robert G. Shaw of Boston in the county of Suffolk and Commonwealth aforesaid, Franklin Haven of said Boston, and Ichabod Goodwin of Portsmouth in the State of New Hampshire, of the second part, witnesseth, That whereas said party of the first part . . . . . are desirous of raising money by loan, not exceeding in amount $350,000; and in order to secure the repayment thereof have determined to issue their bonds, not exceeding three hundred and fifty in number, for the sum of one thousand dollars each, bearing even date with these presents, and payable in twenty years from their date to the bearers thereof, with interest thereon payable semi-annually, . . . . . . . and to be of the form of the bond hereto annexed; now, therefore, the said party of the first part, in order to secure the payment of the said bonds and interest, and in consideration of one dollar, . . . have granted &c. . . . unto said party of the second part, their successors in the trusts hereby created, and assigns, the following described real estate situated in said Boston, viz: . . . . . . . . .

"In case said party of the first part shall fail to pay the principal, or any part thereof, or the interest, or any part thereof, of any of said bonds, at any time when the same shall be demanded, after the same shall have become due and payable,

according to the tenor thereof, then, at any time after ninety days from the time of such demand and default, and whilst such default continues, upon the written request of the holder of said bond, said party of the second part, their successors in the trusts hereby created, and assigns, may enter into and take possession of all or any part of said premises, and, as attorneys in fact or agents of said party of the first part, by themselves, their agents or substitutes duly constituted, have, use and enjoy the same, making from time to time all needful repairs, alterations or additions thereto, and, after deducting the expenses of such use, repairs, alterations and additions, apply the proceeds thereof to the payment of the principal and interest of all said bonds remaining due and unpaid, *pro rata;* or the said party of the second part, their successors or assigns, at their discretion may, and, at the written request of one half in amount of the holders of the bonds remaining due and unpaid, shall cause the said premises, or so much thereof as shall be necessary to pay and discharge the principal and interest of all such bonds as may then be due and unpaid, to be sold at public auction upon the premises, . . . . . . and shall execute to the purchaser or purchasers thereof a good and sufficient deed of conveyance in fee simple of the same, which shall be a bar at law and in equity against the party of the first part, their successors and assigns, and all persons claiming under them, of all right, title, interest and claim in or to said premises, or any part thereof so sold and conveyed. . . . . . . . . . .

"And it is further mutually agreed that, until breach of condition of the aforesaid mortgage, the party of the first part, their successors and assigns, shall remain in undisturbed possession and occupation of the premises hereby conveyed; and nothing herein contained shall be so construed as to prevent said corporation from improving said real estate, or making leases of such parts thereof as they may desire and have opportunity to make. . . . . . . . . .

"In testimony whereof, said party of the first part have caused these presents to be signed by their president, and their common seal to be hereto affixed, and said parties of the second

part have hereto set their hands and seals, the day and year first above written.　　　　　Sam'l. S. Lewis, President.　(Seal.)

" Robert G. Shaw. (Seal.)　Franklin Haven. (Seal.)　Ichabod Goodwin. (Seal.)"

The form of bond annexed was in the usual form of railroad bonds, and contained at the bottom the following certificate :

" I hereby certify that this bond is secured by mortgage on real estate in the city of Boston, dated July the first, one thousand eight hundred and fifty, for the sum of $350,000, to Robert G. Shaw, Franklin Haven, and Ichabod Goodwin, in trust for the bondholders. . . . . . . . . One of the trustees."

On the 21st of December 1853, the Grand Junction Railroad and Depot Company executed a second indenture of mortgage of the premises and of certain other property to Thomas Hopkinson, William Whiting and Isaac Livermore, to secure bonds to the amount of $450,000.

On the 1st of January 1857, the mortgagors failed to pay the interest on the bonds, and, on the 11th of April following, the present demandants brought an action to foreclose the mortgage to them, against the mortgagors, and Whiting and Livermore, the surviving trustees under the second mortgage ; and recovered conditional judgment on the 6th of May 1859, on which an execution issued and formal possession was taken and delivered to the demandants on the 22d of the following July.　The actual possession, however, was then and has since continued in the tenants, under the lease hereafter mentioned.

On the 1st of May 1858, the mortgagors executed to the tenants, Nathaniel Adams and Jonas Fitch, a lease of the demanded premises, under which the latter claim title, and which is sufficiently described in the opinion.　This lease covered a portion of the premises included in the mortgages above referred to. The surviving trustees under the second mortgage assented to this ; and, as against the demandants, the tenants relied upon the provision in the first mortgage, and upon an oral assent by the demandants, which they offered to prove, if evidence thereof would be competent.

The second of these actions was also a writ of entry for another portion of the premises included in the mortgages above referred to, and which is claimed by the tenants under an indenture of lease executed to them by the mortgagors on the 1st of July 1853. A sufficient description of this lease is given in the opinion. In August 1858, the tenants entered upon the premises, and have since held and used the same.

The facts in both of the above cases were agreed, and the cases reserved for the determination of the whole court.

*S. Bartlett & G. G. Hubbard,* for the demandants. 1. The words of the provision in the mortgage to the demandants, authorizing the mortgagors to make leases, must be construed with reference to the subject matter and the purpose of the conveyance. The purpose was to raise $350,000, and secure the prompt payment of the interest. If the language used would annihilate that purpose, the language must fail. *Stukeley* v *Butler,* Hob. 168, 172, 173. Shep. Touchstone, 88.

2. But the language is capable of a consistent construction, by holding it to confer such power of leasing as shall be consistent with a mortgagor's estate, namely, until breach of condition. And if a deed will bear a double construction, and in one sense it can effect its purposes, it will receive the construction which will make it efficacious. *Molyn's case,* 6 Co. 6, a. *Churchwardens' case,* 10 Co. 67, b. 2 Com. Con. 533. This construction is strongly supported by the associated provision, authorizing the mortgagors to improve the real estate, which surely must be limited to the period during which, by the provisions contained in the same clause, they are to have possession. The clause as to possession, it is now settled, is a re-demise by mortgagees. *Wilkinson* v. *Hall,* 3 Bing. N. C. 508. *Doe* v. *Goodwin,* 2 Q. B. 14.

3. It is said that the demandants may ratify the leases, to tenants in possession. But how can they be said to be in possession, who have lost their legal estate? In legal contemplation, they are trespassers. But if this were not so, an oral assent to the granting of a term for years is not valid under our statute of frauds, unless it operates by way of estoppel. *Colman*

v. *Packard*, 16 Mass. 39. No case is cited to show that an oral assent by a mortgagee will pass his estate *pro tanto* in a conveyance and lease by a mortgagor, aside from the doctrine of estoppel. In this case, there was no estoppel. *Brewer* v. *Boston & Worcester Railroad Corporation*, 5 Met. 478.

4. If such assent could be proved, it would be by parties who had no right to assent.

5. The execution of the mortgage was in proper form. Angell & Ames on Corp. §§ 225, 226.

*J. G. Abbott & J. W. Rollins*, for the tenants in the first suit. 1. By the mortgage, a written consent is given that the mortgagors may make leases during their possession. All parties contemplated at the time that there should never be a foreclosure, but that the mortgagors should go on making leases and improvements. The object of the whole matter was, that improvements should be made, and the mortgagors had a right to go on making improvements and making leases until an actual entry and taking of possession, for breach of condition. The limitation " until breach of condition " does not apply to the latter part of the sentence, but only to the first. Such is the literal construction, and no other would carry out the intent of the parties. After breach of the condition, the mortgagees were entitled to possession; but even then it was for the interest of both parties that the corporation should retain the possession and improve the property. Suffering the corporation to remain in possession was a waiver by the mortgagees of their right to insist on a forfeiture.

2. The oral assent, (which the case assumes,) is sufficient to confirm the lease. It is not required to be in writing. 2 Cruise Dig. (Greenl. ed.) tit. xv. c. ii. § 5, *note*. Powell on Mortg. 163. 4 Kent Com. (6th ed.) 157. A lease by a mortgagor before possession taken is always valid. It is only voidable at the election of the mortgagee, after he takes possession, and it may be confirmed or assented to, orally, or by acts. When by such assent others are induced to act, and do act, it is too late to withdraw it. *Smith* v. *Shepard*, 15 Pick. 147. *Stone* v. *Patterson*, 19 Pick. 476 *Welch* v. *Adams*, 1 Met. 494. The mortgagees are precluded.

after such assent, from setting up an adverse claim, upon the principle that, where one encourages or permits another to spend money under the mistaken belief that he has a legal estate, he cannot afterwards set up his own claim against the one he has so encouraged. *Storrs* v. *Barker*, 6 Johns. Ch. 168. *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354. *Bright* v. *Boyd*, 1 Story, 492. *Brig Sarah Ann*, 2 Sumner, 206. *Gray* v. *Bartlett*, 20 Pick. 193. Even if it was a mere license, it was a license acted on, and therefore irrevocable. *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 109. *Sampson* v. *Burnside*, 13 N. H. 264. *Cook* v. *Stearns*, 11 Mass. 533. *Ruggles* v. *Lesure*, 24 Pick. 187.

3. The trustees cannot set up that they, in giving this assent, have exceeded their powers, so long as the *cestuis que trust* make no complaint.

*G. S. Hale*, for the tenants in the second suit, urged the following objections, among others, in addition to those taken in the former suit. 1. The mortgage was not executed in proper form. *Brinley* v. *Mann*, 2 Cush. 337. *Hatch* v. *Barr*, 1 Ohio, 390. *Isham* v. *Bennington Iron Co.* 19 Verm. 230, 251, 259, 260. 2. The phraseology of the provision of the mortgage shows an intention to reserve an unusual, and not to secure an undisputed right. The power to improve was not a mere right to expend money on the land, but the right to effect improvements by building-leases, like that to the tenants, or otherwise, and at the same time to protect the lessees, who invested money on the faith of their lease. See 1 Platt on Leases, 254, 269, 315, 350, 424, 425. *Attorney General* v. *Owen*, 10 Ves. 555, 560. 3. The tenants show a right to redeem. *Bacon* v. *Bowdoin*, 22 Pick. 401. *Loud* v. *Lane*, 8 Met. 517. They will, therefore, in case the action is sustained, move that the judgment be only conditional.

CHAPMAN, J.* These cases were argued separately; but they can be most conveniently discussed together. The demandants derive their title from a mortgage made by the Grand Junction

---

* MERRICK, J. did not sit in these cases.

Railroad and Depot Company, July 1, 1850, to the demandants, as trustees, for the security of certain railroad bonds which the mortgagors proposed to issue, and did afterwards issue, of $1000 each, amounting in all to $350,000, and payable in twenty years with semi-annual interest.  The bonds were to be made transferable in the usual form, being payable to bearer.

A preliminary objection was made by the counsel in the second case, that the mortgage conveyed no title to the demandants, because it was not rightly executed.   The words are : " In testimony whereof, said party of the first part have caused these presents to be signed by their president, and their common seal to be hereto affixed. . , . . Sam'l S. Lewis, President."   (Seal.)

The case of *Brinley* v. *Mann*, 2 Cush. 337, is cited in support of this objection.  But in that case the treasurer of the corporation used very different language from that used in this case. It was : " In witness whereof I, (the treasurer,) in behalf of said company, and as their treasurer, have hereunto set my hand and seal ; " thus making it his deed, sealed with his seal in behalf of the principal, instead of the deed of the principal, sealed with their seal.  In this mortgage, it is expressed to be the deed of the corporation, to which they have caused their seal to be affixed, and the name of their president to be signed.  This case is therefore like that of *Abbey* v. *Chase*, 6 Cush. 54.  The question in such cases is, whether the deed purports to be the deed of the principal, or the deed of the agent executed by him in behalf of the principal.  In the first case, it is held to convey their property, because it is their deed ; in the latter case, it does not convey their property, because it is his deed.  It is always a mere question of construction.  In this case, it purports to be their deed, and it therefore conveys their title.

But the principal question in these cases grows out of the following clause contained in the mortgage : " And it is further mutually agreed that, until breach of condition of the aforesaid mortgage, the party of the first part, their successors and assigns, shall remain in undisturbed possession and occupation of the premises' hereby conveyed ; and nothing herein contained shall be so construed as to prevent said corporation from improving

said real estate, or making leases of such parts thereof as they may desire and have opportunity to make."

The tenants claim title under leases made to them respectively by the mortgagors, and they contend that these leases are valid, as against the mortgage, by virtue of this clause. The court are therefore called upon to construe this clause, in its application to these leases. The first lease was made by the mortgagors to the Boston and Worcester Railroad Corporation, July 1, 1853. The portion of the mortgaged property which it embraced consisted of a wharf and a tract of land adjoining. The lease was for the term of thirty years, and for such further time as the property might be held under the provisions of the lease. It was to be subject to renewal from ten years to ten years, unless before the expiration of each new term the lessees should give notice of their intention not to renew. The annual rent was to be $10,174.24, payable in semi-annual instalments, and a further sum of six per cent. upon the cost of buildings, warehouses and tracks to be thereafter erected and placed on the premises. It was further provided that the lessees might have the option to permit the lessors to occupy the premises for the term of twenty years, in lieu of rent and taxes during that time. But a more important provision was, that it was agreed that the lessees should take of the lessors their bonds to the amount of $100,000, payable in fifteen years, with semi-annual interest, and if the interest or principal should be in arrears, they might hold the rents and apply them to the payment of such arrears. Of the money to be advanced by the lessees on these bonds, $20,000 was to be expended in the erection of warehouses, and in other improvements on the leased premises; and $80,000 was to be expended in the construction of a railroad, upon land not included in the lease, or in the demandants' mortgage. The parties made other contracts simultaneously with the lease, but it is not material to consider them, as they do not affect the question before us.

The lease to the tenants in the first suit was made May 1, 1858, under the following circumstances. A second mortgage had been made by the lessors to Thomas Hopkinson, William

Whiting and Isaac Livermore, as trustees, of the same property which was mortgaged to the demandants for security of the bonds of the lessors, amounting to $450,000. The interest on these bonds not having been paid, the trustees had entered and taken possession for foreclosure. While they were thus in possession, to wit, January 1, 1857, the mortgagors failed to pay the interest which became due on the bonds secured by the demandants' mortgage. Whereupon the demandants, on the 11th of April 1857, commenced a suit for foreclosure against the trustees in possession. They obtained judgment and execution in that suit, and possession was delivered to them by an officer July 22, 1859. It thus appears that the lease to Adams and Fitch was made during the pendency of that suit. It provides that the lessees shall erect upon the premises a brick warehouse, to cost $20,500, and to be kept insured; and for this outlay, with interest and insurance, the lessors are to be paid by application of the income and earnings of the building to that purpose. The lease is to continue in force till they are thus reimbursed; the lessors reserving the right to pay off the debt and thus terminate the lease. There is no agreement as to the amount to be allowed for the income and earnings of the building, nor any duty prescribed to either party in respect to it. The trustees of the second mortgage assented to this lease.

In determining the question whether these leases, or either of them, are within the right reserved in the demandants' mortgage, above quoted, it is necessary to advert more particularly to the purpose for which the mortgage was made, and also to its character. It was made to the demandants, not to secure their private debt, but as trustees of the bondholders. These bonds, being in the usual form of railroad bonds, were made to be sold in the market, and transferred by delivery. To give them credit, each bond was made to contain, under the signatures of the officers, and above the coupons, a certificate signed by one of the trustees, that it was secured by mortgage on real estate in the city of Boston for $350,000. The mortgage also contains a power of sale to be exercised by the trustees, at the request of one half in amount of the bondholders, after default

in the payment of any part of the interest, for the space of ninety days, with the right also to enter and take possession.

Now it is obvious that both these leases, if valid, are utterly repugnant to the provisions above stated, for the security of bondholders. They prevent the entry and the sale of the property for the payment of interest on the bonds, and they postpone its application to the payment of the principal to an indefinite period, and perhaps forever. For it may be that the income will never be sufficient to pay the lessees their principal and interest. And the lessees have by the terms of their leases a preference over the bondholders under the first mortgage, as absolute as if the leases had been made prior to the mortgage. If the right to create such a preference had been so clearly expressed in the mortgage, and stated in the certificate on the bonds, as that all parties understood it, the bonds must have been regarded as unsecured, and would have had little or no market value. And if the parties to the mortgage intended that such a right should be reserved, the certificate must be regarded as fraudulent, and as designed to give the bonds a fictitious credit. It is impossible to state a stronger case of repugnance to the object of a grant. And in respect to the terms of the grant, it first conveys a fee simple to the mortgagees, which is made defeasible only by performance of the condition; and after thus transferring the title from the grantors, it purports, upon the construction contended for, to give them a right, at their pleasure, to create new estates for years, for an indefinite length of time, without regard to the condition; so that they may grant for years what they have already granted in fee simple. This is repugnance in terms. It is unlike the provision in a mortgage that the mortgagor shall retain possession of the premises till condition broken. Such a provision, being entirely consistent with the object of the grant, is construed to take effect as a re-demise, making the mortgagor tenant for years. *Wilkinson* v. *Hall*, 3 Bing. N. C. 508. *Doe* v. *Goldwin*, 2 Q. B. 143.

If, then, this clause is repugnant to the grant, it is void. *Stukeley* v. *Butler*, Hob. 168, 172, 173. Shep. Touchstone, 88.

This view concedes that the conveyances to the tenants are

in fact leases, notwithstanding they are, to a great extent, mere mortgages to secure the payment of money lent; for it is true that they are technically leases, though of an unusual character.

It is said that the improvements provided for by the leases are beneficial to the bondholders, by ultimately increasing the value of their security. But it does not appear that any such increase was necessary. If the certificates on the bonds were true, the security was sufficient; and beyond this, an increase in its value is not beneficial to the bondholders. Nor does it appear that the increase is sufficient to meet the principal with accumulated interest; and if it were so, the postponement itself is an injury.

But we think the clause is not to be construed as the tenants contend it should be. It first provides, as is usual in mortgages containing a power of sale, that, until breach of condition, the mortgagors shall remain in undisturbed possession and occupation of the premises, and then follows the part relied upon. " Nothing herein contained shall be so construed as to prevent said corporation from improving said real estate, or making leases of such parts thereof as they may desire and have opportunity to make." Certainly the part relating to " improving said real estate," is limited by the prior words " until breach of condition ; " for the right of the mortgagors to improve cannot coexist with the right of the mortgagees to enter, foreclose and sell. And if the language thus limits the right of the mortgagors to improve, it is no strained construction to say that it equally limits their right to lease to others, in order that they may possess, occupy and improve. For the right of the lessee cannot coexist with the right of the mortgagee to enter, foreclose and sell.

It is objected to this construction that it violates the rule that writings are to be so construed as to give effect, if possible, to every clause and word; for it is said that without this part of the clause the mortgagors would have had a right to make improvements and leases until breach of condition ; and, unless these words are made to secure a larger right, they are unmeaning. To this it may be replied that, if the mortgagors desired

to make improvements that involved a technical waste, as by destroying the wharf for the purpose of substituting something else, an express reservation might be important; and where one reservation was expressed, they might desire to avoid the inference that by the expression of one right they had excluded the other, upon the maxim *expressio unius exclusio alterius.* Thus it does not appear that the parties thought the language would be unmeaning upon the construction which we have given to it.

But a more forcible consideration is, that if the parties had intended that a right should be reserved to the mortgagors to do what would destroy or seriously impair the security of the bond-holders, they would have expressed it plainly, as they were in good faith bound to do. And if there is doubt, the rule of construction contended for by the demandants' counsel must be applied. " If a deed will bear a double construction, and in one sense it can effect its purposes, it will receive the construction which will make it efficacious." *Molyn's case,* 6 Co. 6 *a.* 2 Com. Con. 533. *Churchwardens' case,* 10 Co. 67, *b.*

Applying these views to the lease to the Boston and Worcester Railroad Corporation, the court are of opinion that, though it was valid while the condition of the mortgage was performed by payment of interest, yet it ceased to have any validity as against the mortgage after condition broken.

As to the lease to Adams and Fitch, it is not within the clause, because it was not made till after condition broken, and after the demandants had brought their action for foreclosure.

It is contended by both the tenants that their leases have been confirmed by the oral assent of the demandants; and if the court shall be of opinion that such assent, if given, would be valid, it is agreed that the question whether such assent has been given shall be tried by a jury. Without discussing the question whether trustees would have power to sacrifice the security of the bondholders, and discharge the property from the trust by such a course, the court are of opinion that such oral assent would be invalid. The position concedes that the terms

of the clause did not authorize the leases, and it is then reduced to this proposition : that a mortgagee may release his interest in the mortgaged property for a term of years, by parol. By Rev. Sts. *c.* 59, § 29, such parol release can create only an estate at will. If the demandants had joined in an oral lease, and became parties to it, they would be bound only to that extent; and by merely giving an oral assent to it they do not make it convey a larger estate than they would do by joining in it.

It is contended that the demandants, being mortgagees, are entitled only to a conditional judgment. The answer to this point is, that this is not an action for foreclosure. The demandants brought a suit against the second mortgagees, obtained conditional judgment against them, and under their execution took possession of the mortgaged property. They are therefore to be regarded as mortgagees in possession. They have a right to treat these defendants as disseisors, for the purpose of trying their title. The title to be tried is not their right to enter and foreclose and sell under their mortgage ; but their right to maintain the possession and title which they acquired by their entry. In this view it is not material that the Boston and Worcester Railroad Corporation were not parties to the suit to foreclose. And as to Adams and Fitch, they could not have been parties to it, for their whole title was subsequently acquired.

If the lessees under either lease are entitled to redeem, as they probably are, they have an ample remedy by means of a bill in equity. And they suffer no hardship ; for they may avail themselves of their property by paying off the incumbrances which they knew were upon it when they acquired their title.

*Judgment for the demandants.*